UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 1:04-CR-92 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| ) | |
| MICHAEL JOHNSON ) | |

**SENTENCING MEMORANDUM**

Upon remand from the United States Court of Appeals for the Sixth Circuit, the Court sentenced Defendant Michael Johnson ("Defendant" or "Johnson") to a sentence above the properly calculated United States Sentencing Guidelines range applicable to his case. Since the Court imposed a non-Guidelines sentence pursuant to the Court's authority under *United States v. Booker*, 543 U.S. 220 (2005), and *Gall v. United States*, 552 U.S. 38 (2007), the Court will elaborate upon its reasoning in this memorandum.

I.  **PROCEDURAL BACKGROUND**

On April 20, 2005, Defendant was convicted after trial of four charges related to drug trafficking. Count one alleged a conspiracy to distribute and possess five grams or more of cocaine base, count two alleged Defendant was a felon in possession of a firearm, count three alleged a substantive offense of possession with intent to distribute cocaine base, and count four alleged possession of a firearm in furtherance of a drug trafficking offense.

On December 7, 2006, the Court held a sentencing hearing at the conclusion of which it

announced the sentence of 360 months. The probation office prepared a presentence report ("PSR"), which calculated Defendant's offense level under the United States Sentencing Guidelines ("USSG" or "Guidelines") pursuant to the career offender provisions as 34 and his criminal history category as VI. As a result his Guidelines range was 360 months to life. At Defendant's sentencing hearing, the Court determined objections to the PSR.

In calculating Defendant's proper Guidelines range, the Court concluded Defendant was a career offender under USSG § 4B1.1(c). The Court applied the cocaine base provisions of the Guidelines.

Defendant's sentence of 360 months in prison consisted of 300 months on count one, 120 months on count two, and 240 months on count three, served concurrently, with a term of 60 months on count four to be served consecutively to the other counts. Defendant received a total of four years of supervised release, with four years on each of counts one and four, and three years on each of counts two and three.

On appeal the Sixth Circuit affirmed Defendant's conviction but vacated Defendant's sentence and remanded for resentencing consistent with *Begay v. United States*, 128 S. Ct. 1581 (2008), which changed how courts determine whether prior convictions qualify as predicate offenses for a career offender designation, and *Kimbrough v. United States*, 128 S. Ct. 558 (2007), which decided that district courts have the authority to impose a non-Guidelines sentence even if based upon a disagreement with a particular Guidelines provision. *United States v. Johnson*, No. 06-6545, 2009 WL 224036 (6th Cir. January 30, 2009).

II.   THE COURT'S POST *BOOKER* SENTENCING METHODOLOGY

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Court has announced the methodology it will typically follow in arriving at a sentencing decision. *United States v. Phelps*, 366 F. Supp. 2d 580 (E.D. Tenn. 2005); *see also United States v. McElheney*, 524 F. Supp. 2d 983 (E.D. Tenn. 2007) (finding *Phelps* in line with Sixth Circuit and Supreme Court precedent); *United States v. Swafford*, 2008 WL 5204064 (E.D. Tenn. Dec. 11, 2008) (reaffirming the *Phelps* methodology in light of *Kimbrough*). That methodology involves a three-step sentencing process. As a first step the Court determines the proper advisory Guidelines range. *Gall*, 128 S. Ct. at 596 (2007) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"); *see also United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007) (noting the Guidelines are the benchmark of sentencing analysis). To make this determination the Court often will have to resolve objections to the PSR's Guidelines calculations as well as any factual disputes.

The second step requires the Court to determine whether, pursuant to the United States Sentencing Guidelines Manual, any departures from the advisory Guidelines range apply. USSG ch. 5, pt. K; *Phelps*, 366 F. Supp. at 586. The Court considers arguments and motions filed by the parties for upward or downward departures under the Guidelines or the Sentencing Commission's policy statements. 18 U.S.C. § 3553(a)(4), (5).

After the Court has determined the proper Guidelines range and decided the appropriateness of any departures, the Court must identify the appropriate sentence in light of the considerations set forth in 18 U.S.C. § 3553(a). *Phelps*, 366 F. Supp. at 586. This is based on an "individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. The court may impose a sentence within the applicable Guidelines range (after any clearly applicable departures) if such is consistent

with the court's consideration of the § 3553(a) factors, or impose a non-Guidelines sentence if such is justified by the § 3553(a) factors. *See United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc). A non-Guidelines sentence need not be supported by factors that would have justified a departure under the old, mandatory regime. *See Gall*, 128 S. Ct. at 601-02. However, departure case law is helpful in determining whether a Guidelines sentence is appropriate and in assisting the Court in determining the appropriate sentence. *See United States v. Grams*, No. 08-1697, 2009 WL 1492027, at *3 (6th Cir. May 29, 2009) (noting "the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance."); *United States v. Gale*, 468 F.3d 929, 937 (6th Cir. 2006) (holding the appellate court "can consider the bases for the underlying requests [for departures] within the framework of [its] review of the remaining § 3553(a) factors.").

### III. DISCUSSION

#### A. Advisory Guidelines Range

The Court, using case law in effect at the time, originally calculated Defendant's Guidelines range as a career offender. The Sixth Circuit instructed the court to revisit this determination in light of *Begay v. United States*, 128 S. Ct. 1581 (2008). The new Guidelines calculation determined Defendant's prior conviction for reckless endangerment was not a predicate offense for a career offender determination. The government objected to this finding, contending the reckless endangerment conviction constituted a "crime of violence" under USSG § 4B1.2(a).

A "crime of violence" is a felony under federal or state law that (1) has an element of "use, attempted use, or threatened use of physical force against the person of another," or (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that

4

presents a serious potential risk of physical injury to another." § 4B1.2(a). For a crime to qualify as a predicate offense for a career offender determination, it must "present a serious potential risk of violence akin to the listed crimes," *United States v. Lyndale*, 560 F.3d 420, 421 (6th Cir. 2009) (citing *James v. United States*, 550 U.S. 192 (2007)), and it must "involve the same kind of 'purposeful, violent, and aggressive conduct' as the listed crimes." *Id.* (quoting *Begay*, 128 S. Ct. at 1586).

The court uses the "categorical" approach and looks only to fact of conviction and the statutory definition of the crime of the conviction to determine the nature of the offense. *Id.* (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). The Sixth Circuit has determined the Tennessee statute defining reckless endangerment, Tenn. Code Ann. § 39-13-103, is not categorically a "crime of violence" after *Begay*. *United States v. Baker*, 559 F.3d 443, 453 (6th Cir. 2009). Since the statutory definition is not determinative, the court can conduct further inquiry into the facts supporting the conviction. However, this inquiry is limited to the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). The charging document in this case tracked the statute and, thus, provided no additional support for a "crime of violence" determination. The defense represented the written plea agreement did not contain any additional facts and it would be extremely unusual for a Tennessee trial court judge to make explicit factual findings or for a plea colloquy to contain relevant facts. The government deferred to this assessment and the Court concurred with Defendant's representation of typical Tennessee state court procedure. The government was not prepared to present the Court with any documentary evidence approved by *Shepard*. Since the government had adequate notice from the circuit court's opinion of the need

5

for *Shepard*-compliant records to show whether the conviction was a predicate offense, the Court denied the government's request for a continuance. Therefore, having no basis for finding Defendant's reckless endangerment conviction was a "crime of violence," the Court determined Defendant should not be sentenced as a career offender.

A new Guidelines calculation was prepared by the Probation Office following remand. That calculation assigned a base offense level of 28 based on the weight of the crack cocaine determined to be the proper amount in this case. Defendant does not object to this calculation. With an offense level of 28 and a criminal history category of VI, Defendant's recalculated Guidelines range was 140 to 175 months. However, since Defendant's conviction on count four carries a mandatory 60-month consecutive sentence, the effective Guidelines range was 200 to 235 months.

### B. Imposition of Sentence

Federal sentencing is now governed by Title 18, U.S. Code, § 3553(a). Section 3553(a) requires sentencing courts to consider seven factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the sentencing range established by the guidelines;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar

records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

After considering all of these factors, a court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." 18 U.S.C. § 3553(a).

1. **Nature of Offense**

In April 2004, law enforcement officers executed a search warrant and arrested Defendant and Akil Lee ("Lee"). Upon the entry of the officers into the residence, Defendant ran into the bathroom and flushed evidence down the toilet. One of the officers saw crumbs of what he thought could be an ounce of crack cocaine. The officers located a loaded .38 caliber revolver in a box with trash along the route Defendant ran when he went to the bathroom. In addition, officers found digital scales, .9 grams of crack cocaine, and a bag containing 110 white pills in the residence as well as $237 cash on Defendant. Lee pleaded guilty and cooperated with the government, testifying he sold Defendant approximately 4.5 ounces of crack cocaine. He also testified he had sold Defendant 1/4 ounce of crack cocaine on the day the search warrant was executed.

2. **Character of Defendant**

Defendant is 36 years of age. He comes from a good family, although it appears he had a rocky childhood. His mother is a college professor and his father is retired from the United States Marine Corps. His parents divorced when he was approximately three years old, and he went back and forth between both homes over time. He reports being physically abused by his mother and, at one point, he lived in a group home. Defendant says he is close to his father but became estranged from his mother around the age of 19 due to his lifestyle. Defendant has never been married but was in a long term relationship with Demetrial Goode for 8 to 10 years. They have one son, Demetrius

7

Goode, who was 10 years old at the time of the original PSR. Until Ms. Goode's death from sickle cell anemia, Demetrius lived with Defendant and Ms. Goode. His son presently lives with his maternal grandmother in Chattanooga. Defendant advises before his arrest for the instant offense, he saw his son regularly and considers them to have a close relationship.

Defendant has a history of mental issues. He experiences grand mal seizures due to a car accident in 1995, and was prescribed Tegretol prior to his incarceration for the instant offense. Review of Defendant's juvenile court record revealed he underwent several psychological evaluations as a teenager. On February 20, 1987, he was diagnosed with major depression (recurrent), paranoid state, attention deficit disorder, and conduct disorder-socialized and aggressive. His treatment included individual and group therapy, as well as being prescribed an anti-depressant. On Defendant's motion, the Court ordered a medical and psychological exam. The forensic psychologist determined Defendant was competent to assist counsel, but suffered from some mental illness and had a problem with extensive substance abuse.

The psychologist's assessment of Defendant's drug use is consistent with his account to the probation office. He reports first using marijuana and alcohol at age 16, and this use continued until his arrest. Defendant first used powder cocaine at age 24 or 25. He attended a drug abuse program just prior to his arrest and also attended Alcoholics Anonymous and Narcotics Anonymous meetings from 1993 to 1995 and again from 2003 to 2004.

The original sentence included a recommendation to the Bureau of Prisons to place Defendant in the 500 hour drug treatment program and also to give Defendant appropriate mental health treatment.

**3.     Needs of Public**

Defendant has an extensive criminal history. His first conviction was obtained at the age of 17 for disorderly conduct. He has several convictions for assault, possession of marijuana, evading arrest, driver's licence violations, theft, and firearm possession. His criminal convictions resulted in 19 criminal history points. Two points were added since he committed the instant offense while on probation. His total is 21, establishing a criminal history category of VI.

A number of convictions reference Defendant's possession of a firearm during the commission of another offense. On January 28, 1992, Defendant was stopped and police found a loaded .38 caliber gun under the passenger seat of his car; Defendant dropped a weapon while fleeing from police in June 1992; in December 1996, Defendant was found to have a loaded .38 caliber revolver in his pocket; in October 1997, Defendant had an unloaded .32 caliber gun under the driver's seat when he was arrested for driving on a revoked license; on December 15, 1999, police stopped Defendant and found a .22 caliber gun in his pocket along with crack cocaine; in March 2000, Defendant was charged with stealing a .22 revolver during a burglary; in September 2000, Defendant used a gun during a robbery; and in April 2003, Defendant pulled out a gun after causing a car accident. The escalating nature of these offenses, from possession of a gun in 1992 to actual use of a gun in 2000 and 2003, demonstrates Defendant poses a serious risk of committing violent crimes.

### 4. Consideration of Guidelines

As determined above, the Court calculated Defendant's effective advisory Guidelines range at 200 to 235 months. The Guidelines are the result of the Sentencing Commission's empirical analysis of thousands of sentences and represents "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 349-50 (2007); *see also*

9

*Vonner*, 516 F.3d at 389 (noting the Guidelines represent an attempt to reconcile the § 3553(a) factors). While the court has the authority to deviate from the Guidelines range based on the sentencing disparity between crack and powder cocaine, *Kimbrough*, 128 S. Ct. at 575, Defendant's sentence in this case is driven by his criminal history rather than his conviction for crack cocaine offenses and the Court would impose the same sentence even with a different Guidelines calculation.

 5. **Sentence**

After considering all of the above factors, the Court cannot conclude a sentence within the Guidelines is sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a). With Defendant's long history of criminal activity, the common presence of guns, the frequency and escalating nature of his crimes, and his age, the Court does not deem a Guidelines sentence of 200 to 235 months, approximately 17 to 20 years, with Defendant having already spent almost five years in custody, as adequate to provide the public with sufficient protection from future crimes that might be committed by Defendant. Obviously while Defendant is incarcerated, he will not be a threat to the general public. However, when he is released from incarceration, the risk he poses returns. The Court thinks the risk Defendant poses diminishes over time. Therefore, a longer sentence is beneficial to the public.

Defendant's personal and criminal history demonstrates a propensity for violence combined with poor impulse control. While Defendant appears to be doing well in prison, this is not relevant to the determination of his sentence and whether he has the ability to live peacefully in society. *See United States v. Worley*, 453 F.3d 706, 707 (6th Cir. 2006) (holding a *Booker* remand did not permit consideration of the defendant's post-sentencing rehabilitative efforts). In prison he is in an extremely controlled environment, which severely limits his actions. Defendant's history of

10

repeated criminal acts shows the failure of less restrictive means to control his behavior. In 1987, Defendant was placed in a group home because his mother could not handle his unruliness. In addition, Defendant was charged in juvenile court with crimes he committed while living with his father and step-mother. All of the previous corrections were not sufficient to impress upon him the need to obey the law and conform his conduct to the requirements of society.

The Court finds that a sentence of 300 months is the appropriate sentence in this case. This sentence is above the Guidelines range and thus amounts to a non-Guidelines sentence. Such a sentence will keep Defendant confined until he is in his 50s. This extends Defendant's prison sentence five years beyond the top of the advisory Guidelines range and is necessary because of Defendant's risk to the public. A shorter sentence would not serve the § 3553(a)(2)(C) goal of protecting society from Defendant's future crimes. Defendant's history clearly shows how little effect previous attempts at deterrence have had on Defendant. Defendant's criminal history evidences a lack of respect for the law. He frequently committed new offenses within months of being arrested on a previous charge. For example, on October 4, 1997, Defendant was arrested for driving on a revoked license with an unloaded gun under the driver's seat; less than a month later, on October 23, 1997, Defendant was arrested again for evading arrest, driving on a revoked license, and reckless endangerment where he led police on a lengthy car chase; yet less than a month after that incident, Defendant was again arrested, this time for possession of marijuana on November 15, 1997. This snapshot of events is characteristic of Defendant's criminal history and demonstrates the lack of influence criminal convictions have had on Defendant's behavior. Most disturbing is the escalating nature of Defendant's crimes. If he continues on this trajectory, he will injure someone with a gun. While Defendant will still pose a threat while in his 50s, that threat should be

substantially diminished and is one society can risk. A shorter sentence simply exposes the public to greater risk. The Court does not conclude that the statutory maximum, life imprisonment on count four, should be imposed. The passage of time with Defendant's incarceration is expected to reduce the risk he poses, so he can be released before the end of his life.

With a 300-month sentence, Defendant will age. In addition, Defendant will be able to obtain treatment for his substance abuse and mental health problems. By imposing this sentence, the Court aims to protect the public during the most active years of Defendant's life and to allow Defendant to develop the skills needed to be a peaceful member of society. The Court anticipates this sentence, combined with five years of supervised release, will allow Defendant to reintegrate into society at a time when he is most likely to succeed at becoming a productive, law-abiding citizen. Defendant's risk to society will be mitigated by his incapacity while he is in prison. The Court anticipates 300 months of imprisonment is necessary to protect the public from Defendant's future crimes.

### III. CONCLUSION

For the above reasons and in accordance with the Sentencing Reform Act of 1984 and 18 U.S.C. § 3553, the Court sentenced Defendant to 300 months in prison, followed by five years of supervised release. The term consists of 240 months on count one, 120 months on count two, and 140 months on count three, to be served concurrently. The Court imposed a 60-month sentence on count four, to be served consecutive to the other sentences, for a total term of 300 months in prison. Other conditions appear in the judgment.

A Judgment shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

13